Will the clerk please call the first case? 523-0480-WC, City of Mascoutah Appellant by Matthew Kelly v. the Illinois Workers' Compensation Commission et al., John Harris IV, Appellee by Aaron Chappell. Mr. Kelly, you may proceed. Good morning. May it please the Court Counsel, Matt Kelly, on Respondent, City of Mascoutah. This is clearly a most unfortunate situation, but this is not a situation for which the City of Mascoutah should bear the responsibility. I'm sure all members of the Court are familiar with the Standard on Review, and it is our position that the decision of the Commission, as affirmed by the Circuit Court, is both against the manifest weight of the evidence and contrary to law. While obviously the Standard of Review applies to decisions of the Illinois Workers' Compensation Commission and not the arbitrator, the Commission, in this particular case, affirmed the decision of arbitrator Cantrell without comment. And as such, it's necessary to look at arbitrator Cantrell's findings in order to determine whether said decision was against the manifest weight of the evidence and or contrary to law. The single most important factor to arbitrator Cantrell in deciding this case was that there was absolutely no evidence whatsoever that Petitioner was ever made aware that back dives were prohibited. That is clearly against the manifest weight of the evidence. In fact, that is contrary to the unrebutted testimony, which was presented at trial. Petitioner's testimony as to all of the relevant elements was that he simply could not recall whether he received the information or whether he knew about the rule. He did not testify. He didn't receive the information. He did not testify that he was not advised as to the rule. He did not testify that they did not cover the rule in pre-shift meetings. All he testified to was that he could not recall whether any of that happened. The respondent's testimony was clear and unambiguous with respect to those issues. The city of Mascouda promulgated rules to ensure a safe pool. They published those rules and they made those rules known to their lifeguards and they enforced those rules. The rules were put in writing and provided to Petitioner. They were gone over with Petitioner every shift before the start of his shift. Petitioner could recall that he had meetings before the start of his shift, but his testimony was the only part he could recall was that they covered the pool cleaning. It is respondent's witness's testimony that before they got to addressing cleaning of the pool, they addressed the pool rules, including the rule against backdives. There is no contrary evidence to the testimony presented by the respondent's witnesses that this was a rule, that Mr. and verbally before the start of each of the shifts. Respondent also took its responsibility to enforce its rules seriously. While clearly respondent's efforts were not perfect in all respects, even Petitioner agreed that respondent was serious about the enforcement of his pool rules. The rules were promulgated. They were made aware that the lifeguards were made aware of those rules. Lifeguards were responsible for enforcing those rules and violations were regularly whistled. Respondent's personnel confirmed that, Petitioner himself confirmed that. The lifeguards that were not performing up to speed with respect to enforcement of the rules were addressed by personnel of the respondent. Again, the rules were promulgated. They were communicated. They were enforced. Again, the gorilla in the room, so to speak, is the fact that a fellow lifeguard and another patron did a backdive immediately before Petitioner's backdive, once again, granted respondent was not perfect in all of its efforts, but it nonetheless took its responsibilities very seriously and the fact that these three individuals did what they did within a span of approximately 20 seconds does not negate any of my arguments for the fact that Petitioner was provided with information confirming that backdives were prohibited. It's also contrary to law. The Orsini decision, knowledge that an employee is engaging in activities are not sufficient to confirm employer acquiescence. The Seeger case, knowledge that a co-employee violates the rules is not sufficient to qualify as acquiescence. Again, it's respondent's decision that the decision below was clearly against the manifest way to the evidence and contrary to law. Petitioner points out a couple of issues in his brief that I just want to address with the court. Petitioner addresses some time addressing the pool rules, which were posted for public consumption. Those pool rules do not have the prohibition against backdives on them, but the decision of the arbitrator is not based upon the rules posted on the side of the pool, nor are our arguments. Petitioner also points to the fact that diving was permitted in the context of competitive dive meets. It's not the situation at hand. We have a young man who unfortunately violated a known pool rule and sustained serious injuries as a result of that. In conclusion, petitioner's failed recollections do not qualify as affirmative evidence. There is no testimony in the record to support the finding of the arbitrator that petitioner was not aware that backdives were prohibited. It's in the written rules, petitioner knew that front flips and back flips were prohibited. The prohibition against backdives is on the very same line, but respondent testified that petitioner was provided written copies of the rules. Respondent testified that petitioner was, the rules were reviewed with petitioner in person before the start of his shifts, petitioner did not contradict that testimony. He simply could not recall differently. The respondent undertook every effort to ensure it had a safe pool environment. It promulgated rules, it published rules, it reviewed those rules, it enforced those rules. Petitioner, unfortunately, while on break and acting for his own benefit, exposed himself to an unreasonable risk that resulted in substantial and serious injuries. While petitioner's behavior may have been in the course of his employment, same was certainly, the injury certainly did not arise out of the employment. Based on all of that, respondent would respectfully request that the court reverse the decision of the arbitrator, find that petitioner did not meet his burden of proof with respect to whether he had an accidental injury that arose out of it in the course of his employment and reverse the award of medical benefits and TTD. Thank you. Any questions from the bench? No, you'll have time in reply, Mr. Kelly. Thank you. Thank you, judge. Mr. Chappell. Good morning, your honor. Good morning. You may respond. Your honors may please the court. Mr. Kelly, my name is Aaron Chappell on behalf of the employee FLE, Jack Harris. The employee prays this court finds the termination of the commission that the out of it, of course, employment is a lifeguard. It's not against the manifest way to the evidence. Respondent discussed the arbitration decision at great length. As you're well aware, the standard of review is whether the commission's decision was against the manifest way to the evidence. Well, the commission, excuse me, is not your opponent. Correct. The commission affirmed and adopted the arbitrator's decision. So the arbitrator's decision is the commission's decision. Correct. Your honor. So most of the references made by, by respondent have been solely to the arbitrator. And I feel like this is somewhat misleading. These are comments that should be made about the commission. As justice Hoffman indicated, as stated correctly, that the commission's decision is now the decision of commissioner Simpson. So I just want to make sure that the record is clear. So here, the threshold issue in this matter, it's the issue of accident. For disabling injury to meet the requirements of the act, you must rise out of in the course of employment, as you're well aware. With respect to the, in the course of prong, it refers to the time, place, and circumstances of the injury. The commission found that this prong was met by the employee as the evidence was clear that he was on respondent's premises. He was in the middle of a scheduled work shift. He was required to take a break and employees were allowed to enter the pool during their breaks. This then turns to the arising out of prong, which an injury arises out of an employment when the injury has its origins and some risk, which is incidental to that employment. So the commission relies on the case law concerning lunch hour and personal comfort cases when determining that the petitioner met his burden of proof. So the commission found that the act of getting in a pool during a work break to cool off and have fun with coworkers is an act of personal comfort. The question then turns to was, was the manner in which the employee entered the pool so unusual, unreasonable, or unexpected as to take him entirely out of the sphere of his employment based upon the facts and the evidence the commission found that his actions did not take him out of the sphere of his employment. So we acknowledge the employer had rules and regulations that prohibited back dives. The question then becomes, was there sufficient evidence to prove that the petitioner was unaware of this? The commission found yes. In finding the employee's actions were not unreasonable. The commission found petitioner's testimony to be credible. Assessment of credibility is a function of the commission and not of any review of the court. Excuse me. Would it make any difference if the employee knew about the rule to take him out of the course of his employment? I think then the question becomes, is if he was aware of the rule, then is that act still taking him out of the sphere of his employment by being unusual, unreasonable? And I think here, I mean, the evidence still points to, no, I don't think that his actions were unusual, unreasonable, unforeseen, so I think it still turns toward the same facts that are in evidence, the posted rules for everyone to see prohibited back dives in water less than five feet, except when allowed for competitive swimming training. They posted rules for all to see, say nothing about back dives. Employee was never actually, he never signed the rules and regulations for while there's testimony that it was given to him, I mean, the witness stating that it was given to all employees still cannot be substantiated when we don't have a signed copy from Mr. Harris, what we do have is a signed employee handbook, which says nothing about the rules. So we know for certain he was at least provided with and read a copy of the employee handbook. There's no evidence that he signed the rules and regulations. It suggests there's no evidence that he's actually reviewed these stuff, this doc for. And what does that go to? I think that that goes to his, at least his awareness of the rules and regulations and is when he was testified by one of the witnesses that the rules and regulation were also posted in the guard shack. Well, the commission took note of the fact, how is your case different? If he was aware of the rules, if he was aware of rules, and I think it still turns to the issue of acquiescence judge, even if he's aware of the rules, did the employer acquiesce in his behaviors and the commission still turned and addressed that issue as well. Let's say he was aware of the rules. Well, they at least acquiesced in his behavior of backdiving pool. Tishner testified that from his experience, he was not aware of anyone ever blowing a whistle during a backdive. He had never witnessed it. He had never done so himself. What he did have was personal experience, personal experience of blowing a whistle when somebody performed a backflip, performing a front flip running. He said he had seen those occurrences before other lifeguards stopped that behavior, he in turn stopped similar behavior. So their acquiescence is that even if this was a pool rule, it was not followed. The evidence suggests that, I mean, in the 14 seconds of the beginning of the video, we had three individuals dive into a pool, the first is a senior and tenured lifeguard. Testimony was that he had done this for several years. He'd been a lifeguard at the pool for several years. He was a good employee. He communicated and verbalized the rules. He was the first one to jump in and provide, to do a front dive, I'm sorry, a backdive, following immediately after him was a patron. After, and the lifeguard who first jumped in, his name was Avery. When Avery dove into the pool, no whistle was blown. There's no one who told him that he wasn't supposed to do that. There was a lifeguard feet away from him who did not correct that behavior. So if Avery performs this dive, but it's not corrected, well, I think that shows at least in some part that that dive was acquiesced to by the employer. The second dive is the patron performing the same exact dive. Again, no whistle was blown. No violation was called. So the employer acquiesced to that behavior. Third, we then have petitioner performing of the employee performing a backdive into the pool. Again, no whistle was blown. Unfortunately, the circumstances result in his injury. So even if the employee was aware of the rules and regulations, the court said that there's sufficient evidence to suggest that it was acquiesced to, that this behavior was otherwise allowed by the employer, not by their written rules, but by their conduct. And the employee testified that had he been aware that this was a rule, he would have never performed it to begin with. So I understand the employer's position that there are rules and regulations in there to be strictly followed. And I wish that was the case. But here we have an employee who says that he was unaware of the rules, sufficient testimony, and sufficient evidence to suggest that he was unaware of the rules, but even assuming he was aware of the rules, his actions were not unreasonable because the employer acquiesced in them. The employer also cites several cases here. First, the Orsini case, which involves a mechanic who was injured while working on his own car. I think this case is distinguishable because it really has nothing to do with a personal comfort doctrine. This is a gentleman working on his own car who creates a risk for himself by being injured working on his car on the clock. Here, again, in this case, Mr. Harris isn't working on his own vehicle. He's obviously still at the pool. He's still on the premises. But the analysis is different because he's in the scope, or in the scope and course of his employment. He's on a break. I think that turns to the next two cases that respond and cite, and I'll address those more, the Segler case. This is where an employee had seen another coworker perform a similar act and was injured while doing so. There was no evidence that there was anyone on hand to correct that behavior. It's not as though there was a lifeguard or a security guard to tell him, no, don't do that. In that case, the court says that there's no evidence that the employer acquiesced to that behavior. Lastly, the Dodson case. This was a case where the appellate court affirmed the commission's decision. This is distinguishable again. This has to do with a personal risk where other safer alternative routes were provided by the employer. The risk wasn't inherent in this person's workplace. It's here, and the commission notes this, but there is an inherent risk at working as a lifeguard at a pool. Again, I think the analysis here is distinguishable from the Dodson case. What it comes down to is whether there was ample evidence to support the commission's determination. What the employer is asking of this court is to simply reweigh the evidence. The law is clear though, that if the evidence is conflicting or of a nature permitting inferences, reviewing the court may not substitute its judgment for that of the commission. It cannot be said that the commission improperly deviated from precedent or made a determination that was unsupported by the record. For these reasons, the commission's determination was not against the weight of the evidence. We ask that the court affirm the decision of the commission. Justice Sousa, Your Honors, if you have any questions for me, otherwise I'll cede the floor back to Mr. Kelly. Any questions from the court? No. Okay. Thank you. Mr. Chappell or how do you, how do you, okay. Oh, that helps. Thank you, Mr. Kelly. You may reply. Your Honors, very briefly.  referencing arbitrator Cantrell's findings. Obviously it's the commission decision, but we've got to look to her written findings to understand the commission decision. I strongly disagree. The evidence is not conflicting in this matter. There is no evidence that Mr. Harris was not given these rules. There's no evidence that Mr. Harris, these rules were not reviewed with Mr. Harris. There's no evidence that back dives were not whistled. There is only Mr. Harris testimony that he could not recall any of those things. The testimony of the employer was clear and unequivocal. The information was provided to Mr. Harris. It was reviewed with Mr. Harris. Back dives were whistled and enforced granted, unfortunately not on this occasion, but, but there, this is a question of whether the decision below was against the manifest way to the evidence. And there's only one conclusion if you read the evidence. And that is that he knew this, um, he knew it was a violation and, and he testified that the reason he got in the pool was to cool off and to enjoy his time. So I'll ask you a question, Mr. Kelly, you use the language. He knew this, um, being the claimant, there's a little bit of a nexus issue. I believe in that the rules and regs specifically stated prohibit back dives. They post it. Uh, you've got big saying that you saw people blow for the whistle for that issue, but it seems to lack specificity in the, anyone sitting down with this particular lifeguard and memorializing that that was discussed with this lifeguard. There's also a lack of, uh, any information to say this lifeguard was present when someone enforced or whistled a back dive. So it seems to me the organization did a very good job of listing the rules and making sure that the employers had a copy, but in terms of, you know, memorializing that this particular rule was reviewed with this particular employee, perhaps that's where the arbitrator was lacking additional information. Well, and, and your point is well taken your honor. But if you'll look at the testimony of Julia Biggs and Madeline Groff closely, both of them were unambiguous in that this information and perhaps not in detail in hindsight that I would have liked, but they were both unambiguous in their testimony that this information was given to Mr. Harris himself in writing and that this information was reviewed with Mr. Harris himself at the meetings. Uh, again, there's not a great deal of, yes, I sat down and had this conversation with Mr. Harris kind of testimony in the record. You are correct. Uh, again, if no further questions, uh, respondent would again, respectfully request that the court, uh, take due note and reverse the decision of the commission. Thank you. Any further questions from the court? Okay. Well, thank you counsel, both for your arguments in this matter. This morning, it will be taken under advisement and a written disposition shall issue, and at this time, the clerk of our court will escort you out of our remote courtroom. Thank you.